THEODORE R. BAYARD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

A. R. KLIGMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ARNOLD A. BAYARD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24402, 24403, 24404.   Promulgated June 13, 1951.

*Abraham L. Shapiro, Esq.*, for the petitioners.
*W. Morgan Hunter, Esq.*, for the respondent.

### OPINION.

MURDOCK, *Judge:* The Commissioner determined deficiencies in income tax for 1943 of $647.48 against Theodore, $439.88 against Kligman, and $2,066.42 against Arnold. The only issue is whether income of a trust which they joined in creating is taxable to the petitioners. The facts have been stipulated.

The petitioners all reside in Philadelphia and filed their returns with the collector of internal revenue for the first district of Pennsylvania.

Arnold A. Bayard, Theodore R. Bayard, Marion B. Benson, Frances B. Kazmann, and Sylvia B. Purinton are brothers and sisters; Eva Bayard is their mother and Aaron R. Kligman their cousin; Joseph C. Benson and Harold A. Kazmann are the husbands of Marion B. Benson and Frances B. Kazmann, respectively.

Marion, Joseph, Harold, Frances, Sylvia, and the petitioners, as donors, executed a trust indenture on November 24, 1941. They named Marion, Harold, and Frances as trustees. The donors transferred to the trustees shares of stock of M. L. Bayard & Co., Inc., as shown below. The trust was to continue for 10 years and was to be irrevocable. The trustees were "To advance from the income of the said trust annually, or more often as required, such sum or sums, either by way of gift or of loan, with or without interest, as in the absolute opin-

ion of the Trustees may be necessary to aid any or all of the following:—M. L. Bayard & Co., Inc., Eva Bayard, Widow of M. L. Bayard, any of the above-named Donors and/or any of their respective children."

The trustees were to act by majority vote. They were given broad powers to manage the trust property, except that there were restrictions on the sale of the M. L. Bayard & Co., Inc., stock. They served without pay and agreed not to resign except for cause approved by a majority of the donors. The trust property with accretions and any undistributed income were to be delivered to the donors upon termination of the trust in proportion to the original contribution of each.

The 3,500 outstanding shares of M. L. Bayard & Co., Inc., stock were held as follows on November 24, 1941:

| | Total shares | Shares deposited in Bayard Trust | Shares not deposited |
|---|---|---|---|
| Arnold A. Bayard | 515 | 125 | 390 |
| Theodore R. Bayard | 505 | 125 | 380 |
| Marion B. Benson | 505 | 125 | 380 |
| Frances B. Kazmann | 505 | 125 | 380 |
| Sylvia B. Purinton | 505 | 125 | 380 |
| Joseph C. Benson | 18 | 18 | 0 |
| Harold A. Kazmann | 118 | 18 | 100 |
| Aaron R. Kligman | 148 | 18 | 130 |
| Nina B. Crawford | 380 | 0 | 380 |
| Eva Bayard | 300 | 0 | 300 |
| Marion Bayard Kazmann | 1 | 0 | 1 |
| Total | 3,500 | 679 | 2,821 |

The net income and distributions of the trust were as follows:

| Year | Net income before distributions | Distributions to beneficiaries of the trust | | | |
|---|---|---|---|---|---|
| | | Eva Bayard | Sylvia Purinton | Marion Benson | Theodore Bayard |
| 1941 | $10,185.00 | | | | |
| 1942 | 3,384.20 | | | | |
| 1943 | 6,784.00 | | | | |
| 1944 | 8,821.00 | | | | |
| 1945 | 8,142.69 | $1,816.80 | $55.00 | $65.00 | $15.00 |
| 1946 | 1,447.57 | 2,487.34 | | | 140.00 |
| 1947 | 5,211.50 | *3,428.20 | 1,130.00 | | |
| 1948 | | *2,991.25 | 130.00 | | 100.00 |
| 1949 | | *3,585.22 | | 250.00 | 519.45 |
| Total | 43,975.96 | 14,308.81 | 1,315.00 | 315.00 | 774.45 |

*Includes monies paid for Eva's account to companions, nurses, maids, hospital bills, doctor bills, and other expenses incurred by Eva.

None of the distributions set out in the foregoing paragraph has been reported as such in the income tax returns filed by the trust or in those filed by the recipients of the distributions.

The respondent has determined that a part of the income of the Bayard Trust, proportionate to the number of shares deposited, should be included in computing the net income of each of the grantors as follows:

| | 1942 | 1943 |
|---|---|---|
| Arnold A. Bayard | $623.01 | $1,248.89 |
| Theodore R. Bayard | 623.01 | 1,248.90 |
| Marion B. Benson | 623.01 | 1,248.89 |
| Frances B. Kazmann | 623.01 | 1,248.90 |
| Sylvia B. Purinton | 623.01 | 1,248.90 |
| Joseph C. Benson | 89.71 | 179.84 |
| Harold A. Kazmann | 89.72 | 179.84 |
| Aaron R. Kligman | 89.72 | 179.84 |
| Total | 3,384.20 | 6,784.00 |

The trustees were also donors and were closely related to all of the other donors. The trust was for a period of 10 years, but might be terminated sooner if the trustees chose to resign for some cause approved by a majority of the donors. The grantors were in almost complete control of the corporation whose stock was tranferred to the trust and could determine how much income the trust was to have from dividends of that corporation. It does not appear that the trust ever acquired any other property. The provisions of the trust in regard to the use of its income are unusual and there is no evidence to explain why the trust was created or what it was really intended to accomplish. Income was to be used wherever, in the opinion of the trustees, it might "be necessary to aid any or all" of persons named, including the donors. None of the income was used during the first 4 years. There is no evidence to indicate why any distribution was made although the use to which some of the money distributed to Eva was put is shown. It is a little difficult to understand why, for example, total distributions of $15, made to Theodore in 1945, were "necessary to aid" him within the discretion of the trustees. It is also difficult to understand why other distributions were made or why it would be necessary to aid the corporation, whose stock was the only source of income of the trust.

Donors can not escape tax by setting up a trust, the income of which is to be paid to or accumulated for future payment to themselves within the discretion of some of their own number. The donors would not escape tax in a case like this if they had provided for the accumula-

tion of all income not deemed by the trustees necessary to aid the mother. Incidentally, the financial position of the mother is not shown. The stipulated facts, and they are the only facts in the record, do not show that the Commissioner erred, whether he proceeded under section 22 (a), in the light of *Helvering* v. *Clifford*, 309 U. S. 331, or whether he proceeded under section 167 (a) because the interests of the trustee-grantors, at least to the extent of the proportionate shares, were not adverse within the meaning of that section.

Another issue was settled by stipulation.

*Decisions will be entered under Rule 50.*